■ In the Matter of ROBERT C. SHEPARD, Respondent, v ZONING BOARD OF APPEALS OF THE CITY OF JOHNSTOWN, Appellant. — Appeal from a judgment of the Supreme Court at Special Term (Ford, J.), entered April 13, 1982 in Schenectady County, which granted petitioner's application, in a proceeding pursuant to CPLR article 78, to annul a determination of the Zoning Board of Appeals of the City of Johnstown denying petitioner's request for a special use permit. Following preliminary approval by the City of Johnstown Planning Board, petitioner applied by letter dated July 24, 1981 to respondent for a special use permit to erect "garden type" apartments on property located in a "B" residence zone within the city. The necessity of this request was mandated by subdivision (2) of section 22-402 of the city's zoning ordinance, which permitted the erection of "garden type" apartments in "B" residence zones upon issuance of a special permit by the zoning board of appeals. At the time petitioner made this application to respondent, the city's zoning ordinance contained absolutely no standards to govern the board's actions in deciding special use permit applications. There were also no formalized procedures, in

either the ordinance itself or in any rules or regulations adopted by the board, to guide prospective applicants seeking special use permits at that time. Petitioner's application was initially denied by respondent on August 19, 1981. A CPLR article 78 proceeding which challenged that action for procedural irregularities was successful, with Special Term annulling respondent's decision by order entered October 30, 1981 and remanding the matter for the purpose of conducting a new hearing on petitioner's application. Meanwhile, the City of Johnstown Common Council had amended section 22-207 of the city's zoning ordinance on October 5, 1981 to enable the zoning board of appeals to adopt rules and regulations to effectuate the provisions of the zoning ordinance, "including specific criteria for issuance of variances and permits". Respondent adopted rules of procedure pursuant to section 22-207 of the ordinance on October 16, 1981, which stated that it "shall take due consideration of the effect upon public health, safety, comfort, convenience and general welfare of the community and the effect upon existing adjoining and neighboring sections" when deciding special use permit applications. Upon remand from Special Term, respondent held a new hearing on petitioner's application and again denied the request for a special use permit on December 30, 1981. In its written decision, respondent gave six reasons for denying the special use permit: (1) no environmental impact statement had been filed or a determination of nonsignificance made by any agency; (2) no adequate solution to water problems; (3) no adequate solution to traffic problems; (4) vagueness of the plans; (5) failure to sufficiently establish the need for more housing; and (6) failure to demonstrate the economic benefits of the project to the community. The instant CPLR article 78 proceeding was commenced by petitioner to challenge respondent's December 30, 1981 determination. Special Term again annulled the decision denying the special use permit. It rejected the attempt by the city in passing the October 5, 1981 amendment to the zoning ordinance to delegate to respondent the unrestricted power to establish criteria for issuing special use permits, citing *Matter of Tandem Holding Corp. v Board of Zoning Appeals of Town of Hempstead* (43 NY2d 801, 802). Having concluded that the city had never adopted any valid standards to guide the zoning board of appeals in carrying out its delegated function of issuing special use permits, Special Term found that respondent had no authority for denying a special use permit to an applicant seeking to build garden-type apartments in a "B" residence zone. It, therefore, excused petitioner's failure to file an environmental impact statement, since respondent's act in approving the permit was rendered ministerial in nature and thus exempt from the requirements of article 8 of the Environmental Conservation Law (ECL 8-0105, subd 5, par [ii]). Special Term directed that respondent issue petitioner a special use permit for garden-type apartments without conditions. This appeal by respondent from Special Term's judgment ensued. There must be an affirmance. When petitioner initially applied for a special use permit, there were no existing standards which had to be met before issuance of the permit and respondent was not empowered to impose conditions on any permit it issued. The subsequent amendment to section 22-207 of the city's zoning ordinance, insofar as it authorized the zoning board of appeals to adopt specific criteria for issuance of special use permits, was invalid as an impermissible delegation of power to an administrative agency without standards (*Matter of Tandem Holding Corp. v Board of Zoning Appeals of Town of Hempstead,* 43 NY2d 801, 802, *supra;* 2 Anderson, New York Zoning Law and Practice [2d ed], § 19.11, p 101). Respondent was thereby powerless to deny a special use permit to petitioner, who was seeking to use the property in a manner which was specifically permitted by the city's zoning ordinance. Thus, although subdivision (2). of section 22-402 of the ordinance allowed erection of garden-type

apartments in "B" residence zones only upon issuance of a special permit, the absence of any standards by which respondent could judge petitioner's application in this matter made that body's activities ministerial in nature since discretion could not be exercised. As such, Special Term correctly determined that the requirements of article 8 of the Environmental Conservation Law did not apply to petitioner's application (see ECL 8-0105, subd 5, par [ii]). Respondent also argues that petitioner's application failed to comply with the procedural rules adopted by the board on October 16, 1981. More specifically, respondent contends that petitioner failed to (1) file a written request for a special permit on forms provided by the board, (2) provide written consent from the actual owners of the property since petitioner was merely a contract vendee, and (3) file sufficient plans to ascertain the nature of the request. While we agree with respondent's underlying premise that newly adopted procedural rules can be made applicable to previously filed applications, the failure to comply with subsequently promulgated rules of procedure cannot be made the basis for denial where, as here, the applicant is never requested to amend his pending application and the board entertained it as submitted. Furthermore, respondent did not even list petitioner's failure to comply with its procedural rules as one of the grounds upon which the application for the special use permit was denied. One final matter requires our attention. Unlike the situation involving applications to a zoning board of appeals for a variance, wherein the applicant seeks permission to do that which is prohibited by the zoning ordinance, the instant case involves a special use permit. Special use permits allow a zoning board of appeals to validate a use which has already been expressly permitted by the zoning ordinance (see 2 Anderson, New York Zoning Law and Practice [2d ed], § 18.02, pp 4-6). Since the use for which the permit sought by petitioner in this case is not prohibited by the ordinance, Special Term fashioned the proper remedy by directing respondents to issue the special use permit for which application was made (cf. *Matter of Ehret v Bates,* 18 AD2d 938). To the extent that this court's prior decision in *Matter of Carlstein v Zoning Bd. of Appeals of Town of Union* (71 AD2d 768, 769) implied that a zoning board of appeals had no authority to issue a special use permit when the municipality's legislative body failed to establish proper standards, it is limited to the facts of that case.* It is argued that the result reached in this case will lead to random and inappropriate development of land within the City of Johnstown and exacerbate that municipality's already overburdened infrastructure. We fail to see how granting petitioner a special use permit to erect garden-type apartments, in a zone in which that use has already been legislatively determined to be in harmony with other uses permitted as of right, will lead to such dire consequences. The city's common council is still free, as it always has been, to adopt suitable standards to guide the zoning board of appeals in deciding future special use permit requests *if it is dissatisfied with the current interpretation of its zoning ordinance.* Judgment af-

---

* The dissent, relying on the case of *Matter of North Shore Steak House v Board of Appeals of Inc. Vil. of Thomaston* (30 NY2d 238), states that the matter should be remitted to respondent board for imposition of any reasonable conditions on the special use permit as it may deem appropriate. In *North Shore Steak House,* the zoning ordinance of the Village of Thomaston contained a provision specifically authorizing the zoning board of appeals to grant special permits " 'subject to appropriate conditions and safeguards, and in harmony with the general purpose and intent of this ordinance' " (*id.,* at p 242). No such provision granting the zoning board of appeals the power to condition special use permits existed in the City of Johnstown's zoning ordinance at the time petitioner made his application in the instant case. In the absence of any such delegation, respondent was powerless to condition the issuance of a special use permit (cf. *Matter of Summit School v Neugent,* 82 AD2d 463, 466) and Special Term thus correctly ordered that the permit be issued by respondent without conditions.

firmed, with costs. Mahoney, P. J., Kane and Weiss, JJ., concur; Sweeney and Casey, JJ., concur in part and dissent in part in the following memorandum by Casey, J.

Casey, J. (concurring in part and dissenting in part). Although we agree that so much of Special Term's judgment as annulled respondent zoning board of appeals denial of petitioner's application for a special use permit should be affirmed, we cannot agree with the majority insofar as it holds that the absence of legislatively prescribed standards for the issuance of special permits requires the board to grant unconditionally petitioner's request for such a permit. *Matter of Tandem Holding Corp. v Board of Zoning Appeals of Town of Hempstead* (43 NY2d 801), upon which the majority relies to conclude that respondent was powerless to deny petitioner's special use permit application in the absence of stated standards in the ordinance, concerned an ordinance which, in fact, contained stated standards guiding the administrative body's consideration of special use applications. The court noted (*id.,* at p 802) that under such circumstances, compliance with those standards must be shown before any special exception can be secured. Citing *Matter of North Shore Steak House v Board of Appeals of Inc. Vil. of Thomaston* (30 NY2d 238), the court further noted (43 NY2d, at p 802) that resolution of the problem is "both simpler and different" where the ordinance in question "stated no elaborated standards". Thus, the guiding principles for resolving cases where, as here, the ordinance fails to provide standards to be considered by the board in determining special use applications must be gleaned from the *North Shore* case, not the *Tandem Holding Corp.* case. Significantly, the court in *North Shore* (*supra*) did not conclude that the absence of stated standards required the board to grant unconditionally all special use or special exception applications. Rather, it held (30 NY2d, at p 244) that the applicant was entitled to a special exception upon a showing "that the use is contemplated by the ordinance subject only to 'conditions' attached to its use to minimize its impact on the surrounding area".[*] Here, the use proposed by petitioner concededly is contemplated by the ordinance. Accordingly, under the rule set forth in *North Shore* (*supra*), the board was required to issue the special use permit, but it could impose "conditions" to minimize the impact of the use on the surrounding area. The board in this case issued a denial of petitioner's application, giving six reasons for the denial. Since petitioner has carried his burden of showing that the use to which he seeks to put the property is contemplated by the ordinance, the board's outright denial of the special use permit was erroneous (*Matter of North Shore Steak House v Board of Appeals of Inc. Vil. of Thomaston, supra*). The appropriate remedy is not, however, an order directing the board to issue an unconditional permit, but rather, the matter should be remitted to the board with directions that it issue the permit subject to any reasonable conditions it deems appropriate (*id.,* at p 246; see, also, *Matter of Biener v Incorporated Vil. of Thomaston,* 85 AD2d 730; *Matter of North Shore Equities v Fritts,* 81 AD2d 985, 986).

---

[*] Since the court in *Tandem Holding Corp.* took care to distinguish *North Shore,* its statement (43 NY2d 801, 803, *supra*) that requests for special exceptions need not always be granted subject only to the imposition of reasonable conditions was not intended to overrule *North Shore.* Rather, the court was recognizing that different tests were to be applied in determining an applicant's entitlement to a special use permit, depending upon whether the ordinance contained stated standards (see *Matter of Miller v Ward,* 72 AD2d 565, 566).